WARREN–SCHARF ASPHALT–PAVING CO. *v.* SECRETARY OF STATE.

STATUTES—FOREIGN CORPORATIONS — INCREASE IN CAPITAL STOCK —FRANCHISE FEE.

> The provision of Act No. 79, Pub. Acts 1893, subjecting foreign corporations theretofore authorized to do business in this State to the payment of a specified franchise fee upon every increase of their capital stock, does not apply to an increase of stock made prior to the passage of the act, although the certificate thereof was not filed with the secretary of state until after the act took effect; and this notwithstanding the provision of 3 How. Stat. § 4161*d*6, that foreign corporations, when permitted to carry on business in this State, shall be subject to all the restrictions and liabilities of domestic corporations, and the provision of 3 How. Stat. § 4161*a*1, subd. 4, that an increase in the capital stock of a domestic corporation shall be operative from the date when the certificate is received by the secretary of state.

*Mandamus* by the Warren-Scharf Asphalt-Paving Company, a foreign corporation, to compel Washington Gardner, secretary of state, to record certificates of increase of relator's capital stock. Submitted November 17, 1897. Writ granted December 7, 1897.

*Bowen, Douglas & Whiting,* for relator.

*Fred A. Maynard,* Attorney General, for respondent.

MOORE, J. The relator is a corporation organized in New York in 1890, and in June of that year it filed with the clerk of Wayne county, in this State, a copy of its articles of incorporation, and also filed in the office of the secretary of state of Michigan the resolution required by section 4331, 1 How. Stat. Its capital stock at this time was $60,000. This capital stock was increased from time to time, until in April, 1891, it reached $750,000; but no certificate of increase of capital stock was filed with the

secretary of state until as stated herein.   In May, 1895, the relator increased its capital stock from $750,000 to $950,000.   In August, 1897, it filed with the secretary of state a certified copy of said increase, with a recording fee of $1, and a franchise fee of $100, with a request to record said certificate, and to issue a certificate of said record.   The secretary of state declined to do this until certificates of the prior increase of capital stock were presented.   The relator, in September, filed copies as requested. The secretary of state then required a payment of $345 franchise fee, in addition to the $100 tendered, before he would record the certificates of increase of capital stock, and issue certificates thereof.   This is a proceeding to compel the secretary of state to record said certificates upon the payment to him of a recording fee of $1 for each of said certificates, and the franchise fee of $100.

Act No. 182, Pub. Acts 1891, subjected every corporation or association thereafter incorporated by or under any general or special law of this State to a franchise fee of one-half of one mill upon every dollar of its capital stock, and, upon each subsequent increase thereof, to a like fee. This section was amended by Act No. 79, Pub. Acts 1893, so as to subject foreign corporations thereafter incorporated, or thereafter permitted to transact business in this State, that had not filed or recorded their articles of association under the laws of this State prior to the passage of the act of 1893, to the payment of the same fee.   The secretary of state bases his refusal to record the certificates of increase of capital stock, without the payment of a franchise fee upon the increase of capital stock made prior to the enactment of the law of 1893, upon a provision found in subdivision 4, § 2, Act No. 232, Pub. Acts 1885, as amended by Act No. 170, Pub. Acts 1889, which reads:

" * * * Subject to the limitations herein named, the capital stock and number of shares may be increased or diminished at any annual meeting of the stockholders, or at any meeting duly called for that purpose, by a vote of two-thirds of the capital stock of the corporation, and at such meeting the stockholders shall have power to make

all necessary provisions for calling in and canceling the old and issuing new certificates of stock; but nothing herein contained shall in any way operate to discharge any company which may diminish its capital stock from any obligation or demend that may be due from said company. When any such corporation shall so increase or diminish its capital stock, the president and a majority of the directors shall make a certificate thereof, which shall be signed by them, and recorded and returned, as is provided herein for recording and returning the articles of association; and such increase or diminution shall commence and be operative from and after the date when the certificate is received for record in the office of the secretary of state." 3 How. Stat. § 4161a1, subd. 4.

A reference to the context shows that this was a provision in the law applying to the formation of domestic corporations. This is made the more evident from the fact that by Act No. 170, Pub. Acts 1889, a new section was added to the statute, which provided:

"Corporations organized under the laws of any State, * * * upon recording copies of their charter, * * * as provided in section 9 of this act, and upon filing in the office of the secretary of state a resolution, as required in general section 4331 of Howell's Statutes, and appointing an agent for service of process, may, for such purposes, carry on business in this State, and shall enjoy all the rights and privileges, and be subject to all the restrictions and liabilities, of corporations existing under this act." 3 How. Stat. § 4161d6.

The respondent now claims that, as the foreign corporation enjoys its privileges subject to the restrictions of domestic corporations, it should be held that the relator did not increase its stock, so far as this State is concerned, until it filed its certificate of increase of stock with the secretary of state.

It is undoubtedly true that the legislature intended to subject foreign corporations to the provisions of law contained in the act relating to domestic corporations, so far as they were applicable. Sections 1 and 2, Act No. 232, Pub. Acts 1885, provide who may form a corporation, and how it shall be organized; what its

name shall be, and the limitations as to the amount of stock; the size of the shares of stock; what proportion of the stock shall be paid in; the place in this State where the office of the company shall be located; the names of the stockholders, etc.   It will hardly be claimed that all these restrictions and limitations apply to foreign corporations.   Prior to the enactment of the law of 1893, the relator had been authorized to do business in this State. If it had presented to the secretary of state its certificate of increase of stock any time before the law of 1893 took effect, it is conceded that upon the payment of the recording fee it would have been the duty of the secretary of state to record the certificate.   We think it too narrow a construction to give to the language used in subdivision 4, § 2, of the act of 1885, and section 37 of the act of 1889, to say that for all increases of capital stock made prior to 1893 a franchise fee must be paid.   This makes the law of 1893 retroactive, when it is evident the legislature did not intend that the franchise fee should be required of companies then authorized to do business in this State, except for such increase of the capital stock as was made subsequent to the enactment of the law of 1893.

The writ should issue as prayed.

The other Justices concurred.